UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA  ) | |
| )  | |
| v.                                                            ) | Criminal No. 05-CR-10195 JLT |
| )  | |
| ROBERT WILLIAMS,                       ) | |
| )  | |
| DAWN YOUNG                                 ) | |
| (a/k/a "Dawn Rossi")                       ) | |
| )  | |
| BROOKE DENMAN                         ) | |

## GOVERNMENT'S SUBMISSION IN SUPPORT OF DETENTION

The United States of America hereby submits the affidavit of Federal Bureau of Investigation ("FBI") Special Agent Tamara Harty in support of its motion for the pretrial detention of defendants Dawn Young and Robert Williams pursuant to 18 U.S.C. §§3142 (f)(1)(A) and (f)(2)(A). The affidavit is attached hereto and will be sworn to by Agent Harty at the detention hearing, scheduled for August 22, 2005 before Magistrate Judge Joyce L. Alexander. This affidavit will be offered by the United States as the substance of the direct testimony of Agent Harty.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

August 22, 2005

By: _/s/ Wendy Waldron_
Wendy Waldron
Trial Attorney
United States Department of Justice
Criminal Division
1400 New York Ave., N.W. 6th Floor
Washington, DC 20005
(202) 353-3745
Fax: (202) 514-1793

CERTIFICATE OF SERVICE

This is to certify that I have served a copy of the foregoing Submission in Support of Detention and Affidavit in Support of Detention upon defendant Dawn Young, by faxing a copy to counsel of record, John Swomley, at (617) 227-8059 on this 22nd day of August, 2005.

*Wendy Wal—*
Wendy Waldron
Trial Attorney
United States Department of Justice
Criminal Division
1400 New York Ave., N.W. 6th Floor
Washington, DC 20005
(202) 353-3745
Fax: (202) 514-1793

CERTIFICATE OF SERVICE

This is to certify that I have served a copy of the foregoing Submission in Support of Detention and Affidavit in Support of Detention upon defendant Robert Williams, by faxing a copy to counsel of record, George Gormley, at (617) 478-2755 on this 22nd day of August, 2005.

*Wendy Wal*
Wendy Waldron
Trial Attorney
United States Department of Justice
Criminal Division
1400 New York Ave., N.W. 6th Floor
Washington, DC 20005
(202) 353-3745
Fax: (202) 514-1793

## AFFIDAVIT OF TAMARA N. HARTY

I, Tamara N. Harty, being duly sworn, hereby depose and state as follows:

## QUALIFICATIONS AND INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed for approximately three years. I have been assigned to the Boston Division since February 2003. I am currently assigned to the Bank Robbery Task Force, which includes personnel of the FBI, the Massachusetts State Police, and the police departments of Boston, Malden and Cambridge. In addition to investigating bank robberies, the Task Force also investigates prostitution, crimes aboard aircraft, and racketeering activity. I am the Crimes Against Children Coordinator for the Boston Division of the FBI and have attended several training seminars, including those sponsored by the National Center for Missing and Exploited Children (NCMEC), the Las Vegas Metropolitan Police Department and Law Enforcement Instructors Alliance, the Children's Advocacy Center of Suffolk County, and the Dallas Police Department and Dallas Children's Advocacy Center.

## **PURPOSE OF AFFIDAVIT**

2. I am submitting this affidavit in support of the pretrial detention of defendants Dawn Young and Robert Williams pursuant to 18 U.S.C. §§3142 (f)(1)(A) and (f)(2)(A).

3. As a result of my personal participation in this investigation, through my conversations with other agents, and my analysis of reports prepared by other agents, I am familiar with all aspects of this investigation. I submit this affidavit based upon my personal knowledge derived from my participation in this investigation and upon information that I have received from a variety of other sources, including other law enforcement officers, public

1

records, telephone toll records, and other evidence gathered in connection with this investigation.

4.  This affidavit does not contain all of the information gathered during the investigation; rather it contains information that I believe is sufficient to support the government's motion for the pretrial detention of defendants Dawn Young and Robert Williams.

### Facts of the Investigation

5.  In October 2000, FBI Special Agent Charles Gianturco began participating in an investigation of prostitution activities in the Boston area, including the use of minors in prostitution activities. In December 2003 I became co-case agent with SA Gianturco with respect to that investigation, and I became sole case agent in February 2004. As part of my involvement with the investigation, I have spoken on numerous occasions with SA Gianturco and other members of federal, state and local law enforcement who have participated in this investigation and related investigations. I have also interviewed witnesses, reviewed reports and evidence collected and have otherwise become fully familiar with the investigatory steps taken to date.

6.  As part of this investigation, I have obtained records from the Massachusetts Registry of Motor Vehicles showing that Dawn Young has held drivers licenses using one social security number and birth date and the name "Dawn Young" and another drivers license using a different social security number and birth date and the name "Dawn Rossi."

7.  I have personally interviewed the person identified in the Indictment as Minor A on several occasions. I have also reviewed reports of interviews with Minor A by other law enforcement officers.

8.  Minor A reported that in about August 2000, when Minor A was thirteen years

2

old, Robert Williams arranged for her to begin working for him as a prostitute. Minor A stated that Williams kept the majority of her earnings from prostitution during this time period, and continuing until 2002.

9. Minor A stated that in about October 2000, Robert Williams arranged with others for Minor A to work as a prostitute in Hartford, Connecticut and drove her from Massachusetts to Connecticut to work at the Alpha Club in Hartford. In connection with this investigation, I have reviewed materials seized from the Alpha Club by law enforcement in 2003. These materials include a copy of an application using an alias commonly used by Minor A and featuring her picture; the application is dated October 7, 2000.

10. Minor A estimated that she met Dawn Young at about the beginning of 2001. Minor A reported that between about January 2001 and about September 2002, Dawn Young was operating an escort service and sent Minor A on numerous prostitution calls. Minor A stated that Robert Williams and Dawn Young provided her with details about where to meet men to engage in sex for a fee. These prostitution calls were arranged both in person and using the telephone. Minor A stated that Dawn Young received fees, which were typically in the amount of $100, for arranging prostitution calls for Minor A. Dawn Young was given these fees by either Robert Williams or Minor A.

11. Minor A reported that in early 2001, Dawn Young instructed Minor A how much money to charge for particular sex acts, and how to ensure that a customer was not a law enforcement officer. Minor A also reported that Dawn Young arranged for Minor A to obtain false identification in Rhode Island during this time period. In connection with this investigation, I have reviewed records from the Rhode Island Registry of Motor Vehicles indicating that Minor

A obtained identification using an alias and fake birth date in Rhode Island in April, 2001.

12. Minor A also stated that between about January 2001 and about July 2001, on at least one occasion, Dawn Young drove Minor A from Massachusetts to New Hampshire for Minor A to exchange sex with an adult for money.

13. Minor A stated that in the Summer of 2001, Robert Williams showed Dawn Young a poster of Minor A, which was distributed by the National Center for Missing and Exploited Children ("NCMEC"). The poster bore the true birth date of Minor A and indicated that she was fourteen years old at that time. I have reviewed a copy of this poster and confirm that it contained a picture of Minor A, along with her name, birth date and other relevant information. Minor A also stated that after the poster was found, Williams and Young made a plan for Brooke Denman to drive Minor A to New Hampshire to call NCMEC to say that Minor A was safe. Minor A also stated that the day after Robert Williams showed the poster to Minor A and Dawn Young, Brooke Denman drove Minor A to New Hampshire to call NCMEC and then transported her back to Massachusetts. In connection with this investigation, I have reviewed a report by the Salem Police Department indicating that NCMEC reported that they received a call from someone claiming to be Minor A on about July 1, 2001 and that the call came from a phone booth in New Hampshire.

14. Minor A stated that in the months following the finding of the NCMEC poster in July 2001, Brooke Denman drove Minor A on multiple prostitution calls arranged by Dawn Young. Minor A also stated that during the Summer and Fall of 2001, Robert Williams and Minor A continued to give Dawn Young a share of the money made by Minor A from prostitution calls referred by Young.

15. Minor A reported that Robert Williams drove her and arranged for her to travel multiple times between Massachusetts and other states for prostitution activities during 2001. These trips included multiple trips to work as a prostitute in Kittery, Maine during early 2001. Minor A also stated that she went back to work at the Alpha Club in Connecticut in October 2001. The materials seized from the Alpha Club in 2003 also include a club application filled out by Minor A under her common alias and featuring her picture; the application is dated October 15, 2001. In connection with this investigation, I have also reviewed wire transfer records obtained from Western Union. These records include money transfer records dated October 17, 2001 and October 18, 2001 from Minor A (using her common alias) in Connecticut to Williams in Massachusetts for $240 and $200, respectively.

16. According to Minor A, in the Fall of 2001 Williams transported her to Rhode Island to stay with one of his relatives and work as a prostitute. Williams would reportedly come down to Rhode Island on weekends and collect the money made by Minor A from prostitution activities. I have also reviewed wire transfer records from Western Union indicating that on November 5 and November 20, 2001, Robert Williams wired $100 and $25 to Minor A in Rhode Island and that on November 21, 2001, Minor A (using her common alias) wired $40 from Rhode Island to Robert Williams in Massachusetts.

17. Minor A stated that, in or about December 2001, Dawn Young told Robert Williams about an online escort service through which Young got prostitution calls, and Williams thereafter arranged for Minor A to start getting prostitution calls referred through the online escort service.

18. Minor A also reported that in about June 2002, Minor A stopped prostituting in

Massachusetts and went to live in Indiana for several months and that Williams arranged for money to be wired to Minor A to bring her back to Massachusetts in or about July 2002. I have reviewed records from Western Union indicating that Robert Williams wired money to Minor A in Indiana on June 29, 2002 and July 9, 2002, for $100 and $116, respectively. Minor A stated that when she returned to Massachusetts, in or about July 2002, Williams and Young arranged for Minor A to begin doing prostitution calls again.

19. In connection with this investigation, I have also interviewed witnesses and reviewed reports of witness interviews showing that Dawn Young used additional minors in prostitution activities. I have met several times with a person that I will identify as "Minor B," who turned 18 years old in March, 2003. Minor B reported that she met Dawn Young when she was about fifteen years old and that she talked to Young about working for Young's escort service. Minor B stated that she moved into Young's house and stayed there for about a month, working for Young as a prostitute the whole time and giving Young almost all of her earnings from prostitution. Minor B reported that there was another minor also living with Young and working for her as a prostitute during this time and that this minor was about 16 years old. According to Minor B, Dawn Young drove her from Massachusetts to a prostitution call at the Foxwoods Casino in Connecticut. On the way, Young's car was reportedly pulled over by the Massachusetts State Police.

20. Minor B was not clear on the timing of her involvement with Young. Some of her statements indicated that it would have been in 2000 and others indicate that it would have been in 2001. I have also reviewed reports of a traffic stop of Young conducted by the Massachusetts State Police in May 2002. My review of these reports and interviews with witnesses including

Minor B indicate that this stop may be the one described by Minor B as occurring on the way to Connecticut. Minor B was under 18 years old at the time of this stop in May 2002.

21.   In connection with this investigation, I have also reviewed reports of interviews conducted by the Massachusetts State Police of two other minors who reportedly worked for Dawn Young as prostitutes. One of these minors, whom I will identify as "Minor C," turned 18 years old in June, 2002. In an interview with Massachusetts State Police in May, 2002, Minor C reported that, around January 2002, she was brought to the apartment of Dawn Young (whom she called Dawn Rossi) in Revere, Massachusetts. Young reportedly told Minor C that she ran an escort service and that Minor C could work for the service by answering phones. Minor C stated that at some point between February and March 2002, Young sent her on a "service call." Minor C said that when the client began to grope and fondle her she told the client to stop. The client reportedly said that he was told by the person on the phone that it was a "full service" agency. Minor C stated that she took the money and ran from the room. In my training and experience, the phrase "full service" in the context of escort services indicates the exchange of sexual intercourse for a fee.

22.   Minor C stated that when she returned to Young's apartment Young was angry that she had run out on the client and warned her never to let that happen again. According to Minor C, Young then told her the different prices for different sexual acts. In the next few days, Minor C was assigned to another service call. Minor C reported that she was afraid of Young, after Young had yelled at her for not having sex on her first assignment. Minor C stated that on this second service call, she received $250 for having sexual intercourse with the client; Young reportedly took all of the money from that call.

7

23.	I have also reviewed the reports of two interviews that the Massachusetts State Police conducted with a person that I will identify as "Minor D" in June, 2002. Minor D turned 18 years old in June, 2002. Minor D reported that she began getting prostitution calls from Dawn Young when she was 16 years old. According to Minor D, Dawn Young began paying for a hotel room for Minor D and took a fee of $100 for every prostitution call done by Minor D.

24.	I have reviewed reports indicating that the Revere Police Department found Minor C and Minor D in April 2002 at a hotel in Revere, Massachusetts. The room was rented under the name of Dawn Rossi and paid for by a credit card assigned to Dawn Young.

*[signature]*
Tamara N. Harty
Special Agent, Federal Bureau of Investigation